## No. 24-1861

# United States Court of Appeals
### for the
# Fourth Circuit

OSVALDO FIGUEROA,

*Plaintiff-Appellant,*

– v. –

BUTTERBALL, LLC,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH

# OPENING BRIEF OF APPELLANT

GILDA A. HERNANDEZ
MATTHEW S. MARLOWE
HANNAH B. SIMMONS
LAW OFFICES OF GILDA A.
    HERNANDEZ, PLLC
1020 Southhill Drive, Suite 130
Cary, North Carolina 27513
(919) 741-8693

*Counsel for Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (810932)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1861__      Caption: __OSVALDO FIGUEROA V. BUTTERBALL, LLC.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__OSVALDO FIGUEROA__
(name of party/amicus)

_____

 who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Gilda Adriana Hernandez                    Date: _____09/23/2024_____

Counsel for: Plaintiff/Appellant Osvaldo Figueroa

**TABLE OF CONTENTS**

*Page*

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.................................................................................................1

ISSUES PRESENTED FOR REVIEW ................................................................2

STATEMENT OF THE CASE..............................................................................4

SUMMARY OF ARGUMENT ............................................................................17

ARGUMENT ........................................................................................................18

    STANDARD OF REVIEW ........................................................................18

        A. Motions to Dismiss...................................................................18

        B. Summary Judgment ..................................................................19

I.    THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFF-
      APPELLANT'S NCWHA CLAIMS FOR EARNED AND ACCRUED
      UNPAID STRAIGHT AND/OR PREMIUM OVERTIME
      PROMISED WAGES ARE NOT RECOVERABLE PURSUANT TO
      N. GEN. STAT. § 95-25.14(A) BECAUSE PLAINTIFF-
      APPELLANT IS SUBJECT TO THE FLSA. ..............................................20

        A. FLSA Statutory Authority ........................................................20

        B. The NCWHA Statutory Authority ...........................................23

        C. The District Court Erroneously Dismissed Plaintiff-Appellant's
           NCWHA Claims Despite A Private Right of Action Pursuant to §
           95-25.22 to Recover All Earned, Accrued, and Unpaid Wages
           Pursuant to N.C. Gen. Stat. § 95-25.6. ....................................30

II.   THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-
      APPELLEE'S 12(B)(6) MOTION TO DISMISS.......................................33

        A. The District Court Improperly Considered Extrinsic Evidence
           Contrary to Guidance by this Court Regarding 12(b)(6) Motions..........33

III.  DISMISSAL OF PLAINTIFF-APPELLANT'S NCWHA CLASS
      CLAIMS SHOULD BE REVERSED AND AN OPPORTUNITY TO
      MOVE FOR CLASS CERTIFICATION PURSUANT TO FED. R.
      CIV. P. 23, SHOULD BE REINSTATED. ..................................................36

i

A. The District Court Should Have Permitted Discovery In This Case Regarding Plaintiff-Appellant's NCWHA Claims....................................36

IV. THE DISTRICT COURT IMPROPERLY DISREGARDED 29 C.F.R. §778.318 AND 29 C.F.R. §778.415 BY IMPROPERLY WEIGHING THE EVIDENCE DESPITE A GENUINE ISSUE OF MATERIAL FACT CONCERNING THE EXISTENCE OF A "CLEAR AND MUTUAL UNDERSTANDING," THAT PLAINTIFF-APPELLANT, AND THOSE SIMILARLY SITUATED, WERE TO BE PAID PIECE-RATE FOR ALL HOURS WORKED, INCLUDING FOR NON-PRODUCTIVE HOURS WORKED...................................................38

A. A Genuine Issue of Material Fact Remains Regarding Whether the Plaintiffs-Appellants Agreed to a Piece-Rate Compensation System. .............................................................................................................38

V. THE DISTRICT COURT ERRED IN IGNORING BINDING PRECEDENT FROM *ANDERSON V. MT CLEMENS* AND *PEREZ V. MOUNTAIRE FARMS* REGARDING PLAINTIFFS-APPELLANTS' RECOLLECTION OF HOURS WORKED AND THE COMPENSABILITY OF PRE- AND POST-SHIFT ACTIVITIES. ...........48

A. Plaintiffs-Appellants' Recollection of Hours Worked Conflicts With Defendant-Appellee's Records........................................................49

B. The District Court Misapplied the Readily Distinguishable Case *Integrity Staffing Sols. Inc. v. Busk*, Given Plaintiffs-Appellants' Work Here is Indisputably Integral and Indispensable from Plaintiffs-Appellants' Work Duties.........................................................50

VI. THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY DISREGARDING THE FLSA'S 29 C.F.R. §778.104 THAT EVERY WORKWEEK STANDS ALONE AND THAT A WORKWEEK IS A FIXED, REGULARLY RECURRING PERIOD OF 168 HOURS, OR SEVEN CONSECUTIVE 24-HOUR PERIODS. ........................................52

CONCLUSION....................................................................................................54

REQUEST FOR ORAL ARGUMENT ................................................................57

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*188 LLC v. Trinity Industries, Incorporated,*
   300 F.3d 730 (7th Cir. 2002) ........................................................ 40-41

*Aguilar-Gamas v. Scott Farms, Inc.,*
   2014 WL 12769404 (E.D.N.C. Jan. 6, 2014) ................................... 29

*Alston v. DIRECTC, Incorporated,*
   254 F.Supp.3d. 765 (D.S.C. 2017)................................. 42, 44, 45, 47

*Amador v. Guardian Installed Servs. Inc.,*
   575 F. Supp. 2d 924 (ND. Ill. 2008) ................................................ 43

*Anderson v. Liberty Lobby,*
   477 U.S. 242 (1986) ................................................................ 19, 20, 37

*Anderson v. Mt. Clemens Pottery Co.,*
   328 U.S. 680, 90 L. Ed. 1515 (1946) ......................................... *passim*

*Anderson v. Sara Lee Corp.,*
   508 F.3d 181 (4th Cir. 2007) ............................................................ 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .......................................................................... 18

*Barton v. Pantry, Inc.,*
   2006 WL 1367421 (M.D.N.C. May 17, 2006) ................................. 29

*Bazemore v. Best Buy,*
   957 F.3d 195 (4th Cir. 2020) ............................................................ 18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007).......................................................................... 34

*Calderon v. GEICO Gen. Ins. Co.,*
   809 F.3d 111 (4th Cir. 2015) ............................................................ 23

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986).................................................................... 19-20

*Charlot v. Ecolab, Inc.,*
   97 F.Supp.3d 40 (E.D.N.Y. 2015) .................................................... 29

*Conley v. Gibson,*
   355 U.S. 41 (1957)............................................................................ 34

iii

*Daniel v. Stericycle Inc.*,
     2022 WL 987341 (W.D.N.C. Mar. 31, 2022).............................................. 27, 28

*Decoster v. Becerra*,
     119 F.4th 332 (4th Cir. 2024). .................................................... 19, 34

*Dolgaleva v. Va. Beach City Pub. Sch.*,
     364 F. App'x 820 (4th Cir. 2010).........................................................34

*Driskell v. Summit Contracting Grp., Inc.*,
     828 F. App'x 858 (4th Cir. 2020)................................................ 21, 25

*Espenscheid v. DirectSat USA, LLC*,
     No. 09–cv–625–bbc, 2011 WL 10069108
     (W.D. Wisc. April 11, 2011)................................................ 43, 44, 45

*Evans v. United States*,
     105 F.4th 606 (4th Cir. 2024) .........................................................18

*First Chicago Int'l v. United Exchange Co.*,
     836, F2d 1375 (D.C. Cir. 1988)........................................................37

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
     776 F. Supp. 2d 117 (E.D.N.C. 2011) ...............................................29

*Gene Guhne, v. Ceridian HCM, Inc.*,
     No. 1:20-CV-925, 2021 WL 1165328 (M.D.N.C. Mar. 26, 2021) ....................25

*Goodman v. Diggs*,
     986 F.3d 493 (4th Cir. 2021) .............................................................40

*Griffin v. Wake Cnty.*,
     142 F.3d 712 (4th Cir. 1998) .............................................................43

*Hall v. DIRECTV, LLC*,
     846 F.3d 757 (4th Cir. 2017) .............................................................43

*Harrods Ltd. V. Sixty Internet Domain Names*,
     302 F.3d 214 (4th Cir. 2002) .............................................................37

*Huey v. Honeywell, Incorporated*,
     82 F.3d 327 (9th Cir. 1996) ........................................................ 41, 42

*In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*,
     No. 5:20-MD-02947-KDB-DSC, 2021 WL 374976
     (W.D.N.C. Feb. 3, 2021)............................................................. 21, 22

*Integrity Staffing Sols., Inc. v. Busk*,
     574 U.S. 27 (2014)..................................................................... *passim*

iv

*Irwin v. Fed. Express Corp.*,
    No. 1:14-CV-00557, 2016 WL 7053383 (M.D.N.C. Dec. 5, 2016)....................28

*Knepper v. Rite Aid Corp.,*
    675 F.3d 249 (3d Cir. 2012)...............................................................................21

*Kramli v. Ann Crittendon, Inc.*,
    2007 WL 9757835 (M.D.N.C. Dec. 17, 2007), *report and recommendation
    adopted*, 2008 WL 11492769 (M.D.N.C. Feb. 20, 2008) ..................................29

*Laborde v. E. Sugar Assocs.,*
    81 D.P.R. 478 (Aug. 11, 1959) .........................................................................22

*Lambeth v. Carolina Pers. Co.,*
    358 F. Supp. 2d 484 (M.D.N.C. 2005) ..............................................................34

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)...........................................................................................20

*Laurence v. Harris Teeter, LLC,*
    2018 WL 10058688 (W.D.N.C. Feb. 20, 2018) .......................................... 21, 28

*Maldonado v. Int'l Bus. Machines Corp.*,
    56 F.R.D. 452 (D.P.R. 1972) .............................................................................22

*McLaurin v. Prestage Foods, Inc.*,
    271 F.R.D. 465 (E.D.N.C. 2010) .......................................................................29

*McMurray v. LRJ Restaurants, Inc.*,
    2011 WL 247906 (D.S.C. Jan. 26, 2011) ..................................................... 21-22

*Mebane v. GKN Driveline N. Am., Inc.*,
    499 F. Supp. 3d 220 (M.D.N.C. 2020) ........................................................ 22, 28

*Moodie v. Kiawah Island Inn Co., LLC,*
    124 F.Supp.3d 711 (D.S.C. 2015)......................................................................21

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ........................................................................ 19, 33

*Nader v. Blair*,
    549 F.3d 953 (4th Cir. 2008) .............................................................................37

*Orquera v. Ashcroft*,
    357 F.3d 413 (4th Cir. 2003) .............................................................................20

*Perez v. Mountaire*,
    650 F.3d 350 (4th Cir. 2011) ................................................................ 48, 49, 56

*Randall v. United States*,
   30 F.3d 518 (4th Cir. 1994) ................................................................ 19, 33, 34

*Ray v. Roane*,
   948 F.3d 222 (4th Cir. 2020) ............................................................. 18

*Republican Party v. Martin*,
   980 F.2d 943 (4th Cir. 1992). ............................................................. 18

*Roldan v. Bland Landscaping Co.*,
   No. 3:20CV00276-KDB-DSC, 2022 WL287549 (W.D.N.C. Jan. 31, 2022) ..... 28

*Romero v. Mountaire Farms, Inc.*,
   796 F. Supp. 2d 700 (E.D.N.C. 2011) ............................................... 29

*Scruggs v. Skylink Ltd.*,
   2011 WL 6026152 (S.D. W. Va. Dec. 2, 2011) ................................ 31

*Skyline Restoration, Inc. v. Church Mut. Ins. Co.*,
   20 F.4th 825 (4th Cir. 2021) ............................................................. 19

*Strickland v. United States*,
   32 F.4th 311 (4th Cir. 2022) ............................................................. 19

*Torres-tinajero v. Alpha Constr. of the Triad, Inc.*,
   No. 1:18CV160, 2020 WL 5411748 (M.D.N.C. Sept. 9, 2020).................. 28-29

*Total Renal Care of N. Carolina, L.L.C. v. Fresh Mkt., Inc.*,
   457 F. Supp. 2d 619 (M.D.N.C. 2006) ............................................... 37

*Trejo v. Ryman Hosp. Properties, Inc.*,
   795 F.3d 442 (4th Cir. 2015) ............................................................. 20

*U.S. Dep't of Labor v. N.C. Growers Ass'n*,
   377 F.3d 345 (4th Cir.2004) ............................................................. 20

*Wai Man Tom v. Hosp. Ventures LLC*,
   980 F.3d 1027 (4th Cir. 2020) ......................................................... 25

*Whitley v. Horton*,
   No. COA03–1459, 2005 WL 351143 (N.C. Ct. App. 2005)................. 28

**Statutes**

29 U.S.C. § 201 *et seq.*.......................................................................... 1, 24

29 U.S.C. § 201(a)(1).............................................................................. 44

29 U.S.C. § 203(r).............................................................................. 22, 23

29 U.S.C. § 203(s).............................................................................. 22, 23

29 U.S.C. § 206(a)(1)................................................................23

29 U.S.C. § 207.......................................................................57

29 U.S.C. § 207(a)(1)................................................................23

29 U.S.C. § 207(g)....................................................................39

29 U.S.C. § 216(b)....................................................................18

29 U.S.C. § 218........................................................................22

29 U.S.C. § 218(a) .............................................................. 20, 21

28 U.S.C. § 1291........................................................................1

28 U.S.C. § 1294........................................................................1

N.C. Gen. Stat. § 95-24.1..........................................................30

N.C. Gen. Stat. § 95-25.1. *et seq*............................................1, 18

N.C. Gen. Stat. § 95-25.3 ..................................................... 24, 30

N.C. Gen. Stat. § 95-25.4 ..................................................... *passim*

N.C. Gen. Stat. § 95.25.5..........................................................24

N.C. Gen. Stat. § 95.25.6 ..................................................... *passim*

N.C. Gen. Stat. § 95-25.6-12......................................................30

N.C. Gen. Stat. § 95-25.12.........................................................30

N.C. Gen. Stat. § 95-25.13................................................... 26, 27

N.C. Gen. Stat. § 95-25.13(1).....................................................29

N.C. Gen. Stat. § 95-25.13(2)............................................... 24, 29

N.C. Gen. Stat. § 95-25.14.............................................. 28, 29, 33

N.C. Gen. Stat. § 95-25.14(2).....................................................29

N.C. Gen. Stat. § 95-25.14(a) ........................................... 2, 20, 55

N.C. Gen. Stat. § 95-25.14(a)(1)....................................... 24, 28, 29

N.C. Gen. Stat. § 95-25.15(b).....................................................24

N.C. Gen. Stat. § 95-25.22 ................................................... *passim*

N.C. Gen. Stat. § 95-25.22(a) .............................................. 26, 30

N.C. Gen. Stat. § 95-25.22(a)(1).................................................30

vii

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................. *passim*

Fed. R. Civ. P. 23 ...............................................................36

Fed. R. Civ. P. 23(A) ................................................... 37, 38

Fed. R. Civ. P. 23(b)(3) ........................................... 18, 37, 38

Fed. R. Civ. P. 56 ...............................................................19

**Regulations**

29 C.F.R. § 778.104 ................................................ 3, 52, 54, 56

29 C.F.R. § 778.318 .................................................. *passim*

29 C.F.R. § 778.318(b) ................................................ 38, 44

29 C.F.R. § 778.318(c) ................................................ 38, 44

29 C.F.R. § 778.415 .................................................. *passim*

13 NCAC 12.0103 .............................................................5, 26

13 NCAC 12.0307 ...............................................................24

13 NCAC 12.0307(b) ...........................................................25

13 NCAC 12.0307(c) ...........................................................25

13 NCAC 12.0805 ...............................................................24

**Other Authorities**

Roy Graber, Butterball net sales, net income drop in Q1 2024,
    WATTPoultry, https://www.wattagnet.com/broilers-turkeys/turkey/
    article/15670225/butterball-net-sales-net-income-drop-in-q1-2024
    (last accessed Dec. 11, 2024) ...........................................23

Us, Butterball, https://www.butterball.com/about-us
    (last accessed Dec. 11, 2024) ...........................................23

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is an appeal from a final judgment of the district court for the Eastern District of North Carolina. The district court had subject matter jurisdiction of this collective and class action for unpaid statutorily required overtime wages pursuant to the Federal Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and for earned and accrued unpaid promised wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq*. This Court has jurisdiction of this appeal from the final judgment of the district court pursuant to 28 U.S.C. § 1291 and § 1294.  The Plaintiff-Appellant timely filed his notice of appeal to the final order of the district court.

## ISSUES PRESENTED FOR REVIEW

The primary issues and arguments raised in the instant appeal are as follows:

(1)    The district court erred in dismissing Plaintiff-Appellant's NCWHA claims for promised unpaid straight and/or premium overtime wages pursuant to N.C. Gen. Stat's § 95-25.6 which is not inconsistent with N.C. Gen. Stat. § 95.25.14(a)'s plain language precluding overtime claims brought under N.C. Gen. Stat. § 95-25.4 for employers subject to the FLSA; instructively, the NCWHA allows Plaintiff-Appellant, to recover all earned and accruing unpaid promised wages and prejudgment interest pursuant to N.C. Gen. Stat. §§ 95.25.6 and § 95.25.22 regardless of whether Plaintiff-Appellant is also owed statutorily required overtime wages under the FLSA (but avoiding duplicative recovery);

(2)    The district court erred in granting Defendant-Appellee's 12(b)(6) Motion to Dismiss ("MTD") and Resolving Factual Disputes, thereby depriving Plaintiff-Appellant the opportunity to engage in discovery;

(3)    The district court erred in determining whether Plaintiff-Appellant agreed or understood he was subject to a piece-rate compensation system, given the conflicting evidence and relevant case law; moreover, the district court erred in disregarding 29 C.F.R. § 778.318 and 29 C.F.R. § 778.415 by improperly weighing the evidence despite a genuine issue of material fact concerning the existence of a "clear and mutual understanding" that Plaintiff-Appellant, and those similarly

situated, were to be paid piece-rate for all hours worked, including for non-productive hours worked;

(4)    The district court erred in granting Defendant-Appellee's Motion for Summary Judgment ("MSJ") despite the U.S. Supreme Court's binding precedent in *Anderson v. Mt. Clemens* allowing employees' recollection regarding their estimated hours worked where an employer fails to keep accurate records and the Fourth Circuit's binding precedent in *Perez v. Mountaire Farms* relating to compensable pre- and post-shift activities;

(5)    The district court erred in applying the U.S. Supreme Court's holding in *Integrity Staffing Sos. Inc. v. Busk*, where the facts are distinguishable to the instant case thereby erroneously granting Defendant-Appellee's MSJ;

(6)    The district court erred in granting Defendant-Appellee's MSJ by disregarding the FLSA's 29 C.F.R. § 778.104 that every workweek stands alone, thereby ignoring Defendant-Appellee's admitted discrepancies regarding time and pay records, in addition to, Plaintiff-Appellant and Opt-in Plaintiffs' recollection of excessive hours worked resulting in unpaid overtime wages.

## STATEMENT OF THE CASE

### Procedural History

On November 4, 2020, Plaintiff-Appellant[1] filed his original Complaint alleging Defendant-Appellee violated the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"). JA20-38.[2] On January 20, 2021, Plaintiff filed his First Amended Complaint ("FAC"). JA39-62. In response, Defendant-Appellee filed a motion to dismiss ("MTD") Plaintiff-Appellant's FAC (JA63-67), which the district court subsequently granted, dismissing Plaintiff-Appellant's FAC without prejudice, allowing Plaintiff-Appellant to file an amended complaint. JA108-125, JA126-151.

On October 4, 2021, Plaintiff-Appellant filed a Second Amended Complaint ("SAC"), reasserting violations of the FLSA and NCWHA and clarifying Plaintiff-Appellant understood he was promised *hourly* pay. JA126-151, JA1455-1457. In his SAC, Plaintiff-Appellant asserted Defendant-Appellee violated the FLSA as Plaintiff-Appellant (1) regularly worked more than forty (40) hours per week and (2) Defendant-Appellee failed to compensate Plaintiff-Appellant for all hours

---

[1] Because the district court did not decertify the FLSA collective, Plaintiff-Appellant brings this Appeal on behalf of himself and other similarly situated, (hereinafter referred to as "Opt-In Party Plaintiffs" or "Plaintiffs-Appellants").

[2] "JA" refers to the Joint Appendix filed herewith.

worked in excess of forty (40) per week, at time-and-one-half Plaintiff-Appellant's regular rate. JA131-139, JA142-144.

Separately, Plaintiff-Appellant asserted Defendant-Appellee violated the NCWHA, N.C. Gen. Stat. § 95-25.6 by failing to compensate Plaintiff-Appellant for all straight time at his promised hourly rate for all hours worked, including, but not limited to premium rates for hours in excess of forty (40) per week at the appropriate premium rate. JA139-142, JA146-148. Plaintiff-Appellant's NCWHA claim is separate and distinct from Plaintiff-Appellant's FLSA claims and relies upon the wages *promised* to Plaintiff-Appellant from Defendant-Appellee either as advertised through job announcements/job descriptions, earning statements, handbook[3], etc. JA139-142, JA146-148, JA859-902, JA2853-3356. This promise is separate and distinct from an employer's statutory obligation under the FLSA.[4] Distinct from Plaintiff-Appellant's FLSA claim, which is based on a statutory requirement that Defendant-Appellee compensate Plaintiff-Appellant time and one-half for hours worked in excess of 40 per week, Plaintiff-Appellant's NCWHA claims derive from

---

[3]Defendant-Appellee's "North Carolina Live Operations" Associate Handbook applied to Plaintiff(s)-Appellant(s) since they engaged in live turkey catching operations for Defendant-Appellee.

[4] Because the former provides for more stringent protections under NCWHA's pay day statute pursuant to § 95-25.6 and recoverable pursuant to § 95-25.22 (against any employer irrespective of whether they are also subject to the FLSA), Defendant-Appellee is *not* exempt from the NCWHA given the promises made to Plaintiff-Appellee and others similarly situated. *See* 13 NCAC 12.0103 (state statutes control when there are intentional differences between the FLSA and the NCWHA).

the wages Defendant-Appellee *promised* to Plaintiff-Appellant yet failed to compensate. JA139-142, JA146-148, JA859-892, JA2853-3356. For example, while Defendant-Appellee asserts Plaintiff-Appellant was compensated on a piece-rate basis, throughout Plaintiff-Appellant's employment with Defendant-Appellee, Defendant-Appellee communicated promised hourly wages to Plaintiff-Appellant through its written policies, communications to Plaintiffs-Appellants and in Plaintiff-Appellant's paystubs. JA139-142, JA146-148, JA859-892, JA2853-3356. For example, Defendant-Appellee's job description advised Plaintiffs-Appellants that the turkey catcher and loader position was an *hourly*, nonexempt from overtime position. JA893-894. Indeed, Plaintiff-Appellant relied upon this *written* promise of hourly pay based on communications during the hiring process, paystubs, and/or written policies, in understanding that in exchange for performing the turkey catcher/loader duties, Defendant-Appellee would compensate him an hourly rate. JA2841-3356, JA971-994, JA139-142, JA146-148, JA3504-3556, JA3447-3449, JA3467-3469, JA3486-3490, JA3495-3497, JA3504-3508, JA3523-3526, JA3532-3534.

On November 11, 2021, Defendant-Appellee filed its MTD Plaintiff-Appellant's SAC and to Strike Plaintiff-Appellant's Collective Action and Class Allegations, asserting Plaintiff-Appellant's NCWHA claim for unpaid promised wages failed because such claim was preempted by the FLSA. JA152-160. In

support of its MTD, Defendant-Appellee attached paystubs from Plaintiff-Appellant. JA157-160. Following substantive briefing regarding Defendant-Appellee's MTD, on July 27, 2022, the district court entered an Order, dismissing Plaintiff-Appellant's Rule 23 Class Claims, holding "NCWHA's exemption from the overtime provision of the NCWHA for persons covered by the FLSA bars Plaintiff from recovering overtime wages under the NCWHA." JA199-217. Therein, the district court's Order also evaluated the limited evidence available on the record at that stage, namely a sampling provided by Defendant-Appellee of *four* paystubs from Plaintiff-Appellant's final year of employment (2018) with Defendant-Appellee. JA199-217.

On August 10, 2022, Plaintiff-Appellant filed a motion for reconsideration of the district court's Order granting Defendant-Appellee's MTD Plaintiff-Appellant's SAC, arguing that such Order was erroneous. JA218-246. Defendant-Appellee responded in opposition on August 31, 2022 (JA247-265), and Plaintiff-Appellant filed his Reply in Support of his Motion for Reconsideration on September 14, 2022. JA266-279. In a one-and-a-half-page Order, the district court denied Plaintiff-Appellant's Motion for Reconsideration on September 29, 2022. JA281-282. Thereafter, Defendant-Appellee filed its Answer to Plaintiff-Appellant's SAC. JA283-303.

After discovery revealed information intrinsically tied and supportive of Plaintiff-Appellant's contention that he was promised hourly pay, Plaintiff-Appellant filed a *second* motion for reconsideration and motion for leave to amend his SAC on April 20, 2023. JA304-901. Defendant-Appellee responded in opposition on May 11, 2023 (JA902-1028). Plaintiff-Appellant filed his Reply on May 22, 2023. JA1029-1043. On July 17, 2023, the district court entered a second Order denying Plaintiff-Appellant's *second* motion for reconsideration and leave to amend his SAC. JA1044-1045.

After months of significant discovery, the parties jointly moved to conditionally certify this matter as a collective action. *See* JA4041. The district court granted Plaintiff-Appellant's Motion for Conditional Certification, thereafter, on July 17, 2023. *See* JA4041-4042.

Shortly thereafter, Defendant-Appellee filed a motion for summary judgment ("MSJ") and motion to decertify on January 19, 2024, asserting that Plaintiff-Appellant was subject to a piece-rate compensation system, that no overtime was due, and that Plaintiffs-Appellants were not similarly situated, along with its Statement of Undisputed Facts ("SUF"). JA1046-2806. That same day, Plaintiff-Appellant also filed a motion for summary judgment and a SUF. JA2807-2809, JA10-2835, JA2836-3587.

Plaintiff-Appellant responded in opposition to Defendant-Appellee's MSJ and SUF on February 15, 2024, pointing to paystubs in the record that demonstrated Plaintiffs-Appellants were *not* adequately paid, along with evidence calling into question Defendant-Appellee's timekeeping records and policies regarding Defendant-Appellee's compensation system. JA3588-3646, JA3647-3726. In addition, Plaintiff-Appellant cited evidence confirming decertification was inappropriate based on Defendant-Appellee's policies that applied to *all* turkey catchers and loaders, along with Plaintiffs-Appellants' testimony. *See generally* JA3647-3588. Similarly, Defendant-Appellee responded in opposition to Plaintiff-Appellant's MSJ and SUF on February 23, 2024 (JA3827-3971), to which Plaintiff-Appellant replied in support on March 13, 2024. JA3972-4023. Defendant-Appellee replied in support of its MSJ on March 15, 2024. JA4024-4039.

On August 23, 2024, the district court resolved disputes of fact in favor of Defendant-Appellee, granting its MSJ and denying its Motion to Decertify as moot. JA4040-4064. Thereafter, Plaintiff-Appellant timely appealed. JA4065-4066. The pending appeal challenges the entire summary judgment ruling, along with the district court's earlier order granting Defendant-Appellee's Motion to Dismiss Plaintiff-Appellant's SAC.

Given the standard of review for appeals from summary judgment is *de novo,* and the summary judgment rulings at issue were made largely based on the district

court's evaluation of the factual record, to which Plaintiffs-Appellants and Defendants-Appellees contributed a significant amount of conflicting evidence, the factual record is introduced below, and more specific, relevant factual disputes are identified separately as necessary.

**Relevant Facts**

Plaintiffs-Appellants (collectively "turkey catchers and loaders") were employed as poultry loaders and catchers for Defendant-Appellee Butterball, LLC in North Carolina. JA127-128. Specifically, Plaintiff-Appellant Figueroa worked for Defendant-Appellee from approximately May 2017 to May 2019. JA130. As turkey catchers and loaders, Plaintiffs-Appellants began each shift by meeting at the feed mill in Turkey, North Carolina at the start time communicated by the crew leader. JA418-419.

Defendant-Appellee Butterball, LLC, is a leading producer of turkey products for human consumption nationwide, distributing over one-billion pounds of turkey each year throughout the United States and in over thirty (30) countries. JA130-131. To meet this demand, Defendant-Appellee has between 250 to 450 growers contracted to maintain and grow turkeys, which are owned by Butterball. JA733, 2135. However, while contract growers maintain the turkeys for Butterball, Butterball owns the turkeys. JA1966.

*Plaintiffs-Appellants' Hours Worked*

Plaintiff-Appellant and Opt-in Plaintiffs dispute the accuracy of Defendant-Appellee's time records. *Compare* JA1047-1048, JA1073-1087 *with* JA3577-3584, JA2817-2821. Although Plaintiffs-Appellants typically clocked in and out at the feed mill at the start and end of their shift, Plaintiffs-Appellants presented evidence that (1) they were not always allowed to  clock in for certain pre- and post-shift activities, including things such as: putting on Butterball issued coveralls and boots, fueling the truck/van, picking up water, food, and/or supplies from the store and sanitizing the vehicle, which could take anywhere from fifteen (15) minutes to thirty (30) minutes. JA2817-2821, JA3577-3584, JA2148-2152, JA3542, JA2262, JA450-452, JA418, JA1160-1162, JA562, JA2269-2270, JA2132-2134, JA2149, JA2260-2261, JA3542; (2) frequently there were issues preventing Plaintiffs-Appellants from clocking in. JA2183, JA2387-2388, JA2268-2276; and (3) perhaps most notably,  the number of hours reported on Plaintiffs-Appellants' time records did not match the number of hours for which Plaintiffs-Appellants were allegedly paid. JA1660-1661, JA1665, JA2817-2818, JA2829-2830.

By contrast, without much evidence contradicting Plaintiffs-Appellants' testimony, Defendant-Appellant asserted that its time records captured all hours worked by turkey catchers and loaders, to which the district court agreed. JA1046, JA1069-1071, JA4055-4060.  However, Defendant-Appellee and the district court failed to contend with the testimony of Defendant-Appellee's witnesses calling into

question Defendant-Appellee's practice of inappropriately moving Plaintiffs-Appellants' hours worked from week to week. JA1046-1047, JA2829-2830, JA4055-4060. Instead, the district court improperly discredited Plaintiffs-Appellants' testimony, finding there was no genuine issue of material fact regarding the accuracy of Defendant-Appellee's records because the pay records were "*almost identical over the relevant time periods*." JA4057.

### *Plaintiffs-Appellants' Overtime*

Central to this appeal, the parties disagreed over whether Plaintiffs-Appellants were owed overtime compensation. JA1046-1047, JA2821-2830, JA3577-3581, JA3599-3606, JA4060-4062. Defendant-Appellee asserted that Plaintiffs-Appellants recorded all hours worked and that Plaintiffs-Appellants were properly paid overtime at a half-time rate for hours worked in excess of forty (40) per week. JA1047-1048, JA1051-1090, JA4060-4062.

Directly contradicting such theory, Plaintiffs-Appellants pointed to specific paystubs and timesheets in the record, which unequivocally demonstrated Defendant-Appellee improperly shifted Plaintiffs-Appellants' hours worked each week, thereby *significantly* shorting Plaintiffs-Appellants' overtime. JA3580-3581. In addition, Plaintiffs-Appellants presented evidence that **(1)** *they typically worked anywhere from seventy-three (73) hours to ninety-six (96) hours per week, and that no paystubs paid Plaintiffs-Appellants for this number of hours*. JA1426, JA1486,

JA133, JA3390, JA3415-3416, JA3434, JA3454, JA3474, JA3493, JA3511, JA3530; **(2)** *Defendant-Appellee's witnesses confirmed the same, testifying that turkey catchers commonly worked anywhere from twelve (12) to fourteen (14) hours a day, and that they were not able to leave work each day until the requirement of birds by Butterball was complete*. JA585; **(3)** *Plaintiffs-Appellants testified they noticed they were shorted overtime.* JA1426-1428, JA2152-2153, JA2288-2289, JA2900-3356, JA3546-3547; **(4)** *Defendant-Appellee's troubling policy advising Plaintiffs-Appellants that they were **not** entitled to overtime pay*. JA2889-2899; and **(5)** *that even if a jury found piece-rate compensation applied, Plaintiffs-Appellants would be owed additional overtime given* (a) Defendant-Appellee's failure to communicate that any alleged piece-rate compensation system would  compensate for both productive *and* nonproductive hours, and (b) given Defendant-Appellee's policy of paying Plaintiffs-Appellants hourly for "other" nonproductive work, such as time spent attending meetings further demonstrated Plaintiff-Appellant's compensation did *not* include "nonproductive" time. JA799-800, JA3603-3606.

### *Compensation Structure*

The parties presented conflicting evidence regarding whether piece-rate compensation or any hourly compensation system applied. JA1046-1047, JA1056-1067, JA3572-3577, JA3599-3604, JA3655-3826, JA3846-3853, JA4048-4054. Defendant-Appellee relied on a singular offer letter (written in English *not* Spanish)

purportedly provided to Plaintiff-Appellant Figueroa, (a non-English speaker), which outlined that he was to be paid by piece-rate, despite challenges to the offer letter's authenticity by *both* Plaintiff-Appellant *and* Defendant-Appellee's witnesses. JA1491, JA809. Defendant-Appellee also relied on Plaintiff-Appellant's original complaint, as evidence that Plaintiff-Appellant understood he was compensated by piece-rate (JA1046-1047), despite Plaintiff-Appellant's testimony that such language was based on Plaintiff-Appellant's *counsel's* misinterpretation of Plaintiff-Appellant's communication of his promised compensation by Defendant-Appellee, (included in his original Complaint) due to translation issues, such misinterpretation  was cured in Plaintiff-Appellant's amended complaints. JA1456-1457, JA1057-1059.

Contrastingly, Plaintiff-Appellant submitted overwhelming evidence of policies *and* testimony indicating that Plaintiffs-Appellants received conflicting information regarding Defendant-Appellee's compensation policies. On the one hand, Defendant-Appellee's written policies or promises suggested hourly pay, and on the other hand, Defendant-Appellee *orally* advised employees to ignore the written policies altogether and described a piece-rate compensation system. At a minimum, serious ambiguities existed. Notably, Plaintiff-Appellant relied on (1) Defendant-Appellee's handbook, which makes no mention of piece-rate compensation anywhere; instead, referring to workers only as either salaried or

14

hourly employees. JA866-869, JA872-873, JA882, JA2824-2827, JA3572-3573;[5] (2) the turkey catcher and loader job description indicated Plaintiffs-Appellants were to be hourly, nonexempt, without *any* mention of piece-rate compensation. JA597-598, JA1168-1169, JA1178, JA1588-1589, JA893-894, JA1999, JA3572; (3) onboarding documents, including various policies, given to Plaintiffs-Appellants at the outset of their employment indicated they were hourly workers. JA2131-2132, JA2178-2179, JA1389, JA1393, JA1445-1446, JA1477-1480, JA2219, JA2224, JA2239-2240, JA2245-2246, JA2431-2433, JA2873-2888, JA3572-3574; (4) testimony from Plaintiff-Appellant Figueroa that he applied for work with Defendant-Appellee because the job announcement indicated Defendant-Appellee's turkey catcher position paid approximately $18.00 per hour, which is also consistent with his earning statements from 2018. JA1388-1389. Additionally, Plaintiff-Appellant testified that orally he was told he would be paid hourly during his interview with Butterball. JA1435-1436, JA1487; (5) Plaintiff-Appellant also testified unequivocally that the proffered offer letter, available only in English, which was presented by Defendant-Appellee during his deposition was *not* the offer

---

[5] Plaintiff-Appellant also relied on testimony from Defendant-Appellee's witnesses, confirming the same. JA1177-1178, JA1591-1594, JA1644, JA2008, JA608-609, JA613, JA608-609

letter he was presented with during his interview,[6] and that, rather, that the signature on the proffered offer letter was "not [his] signature" JA1445-1446; and (6) Plaintiffs-Appellants' paystubs which included Plaintiffs-Appellants' hourly rate,[7] as confirmed by Defendant-Appellee's HR manager,[8] and the number of hours allegedly worked by Plaintiffs-Appellants, and did not indicate the number of loads completed by Plaintiffs-Appellants for each pay period. JA1194, JA2166-2167, JA694; (7) testimony from Plaintiffs-Appellants that they did not understand what "LoadTrip" meant on their paystub. JA3390-3391, JA3409-3412, JA3828-3829, JA3447-3449, JA3467-3469, JA3486-3490, JA3495-3497, JA3504-3508, JA3523-3526, JA3532-3534, JA2154; and (8) testimony from Defendant-Appellee's witnesses that there were no policies advising Plaintiffs-Appellants regarding what "LoadTrip" refers to. JA1196.

---

[6] Rather, Plaintiff-Appellant explained in his deposition that the offer letter he was presented with during his interview indicated he was to be paid $18.08 *per hour*. JA1445-1446. Because Plaintiff-Appellant's actual offer letter was also only available in English, Plaintiff-Appellant relied on Defendant-Appellee's interpreter, who pointed to, and translated, the promise of hourly pay on Plaintiff-Appellant's offer letter. *Id*. Moreover, Plaintiff-Appellant stated in his deposition that the only reason he signed his actual offer letter reflecting hourly pay was because the interpreter informed and demonstrated to him through an offer letter that he was to be paid $18.08 per hour while working for Butterball. *Id*.

[7] JA68-69, JA157-158, JA2900-3356.

[8] JA1277-1278.

## **SUMMARY OF ARGUMENT**

As outlined and supported herein, each of the district court's rulings on the issues and arguments presented is legally and factually deficient and should be rejected by this Court. Consistently, the district court resolved conflicting presentations of evidence in the light most favorable to Defendant-Appellee, the moving party on the motion, especially when dismissing Plaintiff-Appellant's NCWHA claims and when considering extraneous evidence at the motion to dismiss stage.

Moreover, notwithstanding the district court's *own* calculations that Defendant-Appellee had failed to properly pay Plaintiff-Appellant all of his wages for *one* workweek pursuant to Defendant-Appellee's recorded hours worked (but rejected by Plaintiff-Appellant as *not* accounting for all of his *actual* hours worked), (JA210-214) the district court *still* granted Defendant-Appellee's motion for summary judgment. JA4040-4065. Indeed, Defendant-Appellee failed to meet its burden establishing no genuine issue of fact exists and its entitlement to summary judgment as a matter of law. *See* JA1046-1050, JA3588-3621, JA4040-4065. Thus, Plaintiff-Appellant respectfully requests this Court reverse the district court's dismissal of Plaintiff-Appellant's NCWHA claims, granting summary judgment of issues related to 29 C.F.R. §778.318 and 29 C.F.R. § 778.415, reinstate Plaintiffs-Appellant's NCWHA class claims with an opportunity to move for class certification

pursuant to N.C. Gen. Stat. § 95-25.1. *et seq*., Fed. R. Civ. P. 23(b)(3), and permitting Plaintiff-Appellant on behalf of himself and Opt-In  Plaintiffs pursuant to 29 U.S.C. § 216(b) to see this matter through trial, thus, remanding for further proceedings.

**ARGUMENT**

**STANDARD OF REVIEW**

**A.    Motions to Dismiss**

This Court reviews a district court's dismissal under Rule 12(b)(6) *de novo*. *See Evans v. United States*, 105 F.4th 606, 616 (4th Cir. 2024); *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Dismissal is only appropriate where a complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A complaint may only survive a motion to dismiss where its factual allegations "raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible." *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020) (internal quotations and citations omitted).  Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does *not* resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  When deciding a motion to dismiss under Rule 12(b)(6), the court does not consider extrinsic evidence. The court may consider, however, documents attached to the complaint as exhibits, and documents attached to a motion

to dismiss if the documents are integral to the complaint, *and* there is no dispute about the documents' authenticity. *Decoster v. Becerra*, 119 F.4th 332, 336 (4th Cir. 2024).

The Fourth Circuit has made clear a motion to dismiss "should not be granted unless the plaintiff can prove no set of facts to support the claim and entitle the plaintiff to relief." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Fourth Circuit reviews a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Strickland v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) (citing *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021)).

### B.  <u>Summary Judgment</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable factfinder to return a verdict for either party. *Id.* at 252. The non-moving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp.*, 477 U.S.

at 324.  The nonmovant's evidence must be significantly probative to support the claims.  *Anderson*, 477 U.S. at 249.  The Court will *not* weigh the evidence or make findings of fact.  *Id.*

Similarly, this Court reviews questions of statutory construction *de novo*. *Orquera v. Ashcroft*, 357 F.3d 413, 418 (4th Cir. 2003) ("When interpreting statutes [the process] starts with the *plain* language") (citing *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir.2004)).  "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted). Further, the plain meaning of statutory language depends on context.  *Trejo v. Ryman Hosp. Properties, Inc.*, 795 F.3d 442, 445-46 (4th Cir. 2015) (citations omitted).

I.  **THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFF-APPELLANT'S NCWHA CLAIMS FOR EARNED AND ACCRUED UNPAID STRAIGHT AND/OR PREMIUM OVERTIME PROMISED WAGES ARE NOT RECOVERABLE PURSUANT TO N.C. GEN. STAT. § 95-25.14(A) BECAUSE PLAINTIFF-APPELLANT IS SUBJECT TO THE FLSA.**

A. <u>**FLSA Statutory Authority**</u>

Under 29 U.S.C. § 218(a) of the FLSA, the FLSA provides that:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or maximum workweek lower than the maximum workweek established under this chapter. . . .

20

*See id.*

The FLSA expressly contemplates that individual states may enact *stricter* minimum wage and overtime requirements that an employer *must* follow, notwithstanding the FLSA. *See* 29 U.S.C. § 218(a). Indeed, obtaining a more favorable recovery under a state wage and hour law does *not* stand as an "obstacle" to the purpose of the FLSA, which this Court addressed in *Anderson v. Sara Lee* as seeking to "eliminate labor conditions detrimental to workers."  *See Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007); *Knepper v. Rite Aid Corp.,* 675 F.3d 249, 262-64 (3d Cir. 2012) (holding state wage laws were *not* preempted by the FLSA); *Driskell v. Summit Contracting Grp., Inc.*, 828 F. App'x 858, 871 (4th Cir. 2020) (unpublished) (remanding and finding whether relief under separate legal theories is duplicative turns on whether the relief serves different interests). The FLSA is *not* intended to preempt independent state wage and hour laws that cover the same violative conduct as the FLSA, especially if those laws offer plaintiffs *additional* remedies or procedural protections. *See In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, No. 5:20-MD-02947-KDB-DSC, 2021 WL 374976, at *4 (W.D.N.C. Feb. 3, 2021); *see also  Laurence v. Harris Teeter, LLC*, 2018 WL 10058688, at *5 (W.D.N.C. Feb. 20, 2018) (citing *Moodie v. Kiawah Island Inn Co., LLC*, 124 F.Supp.3d 711, 724-25 (D.S.C. 2015)) (quoting *McMurray v. LRJ Restaurants, Inc.*, 2011 WL 247906, at *5 (D.S.C. Jan.

26, 2011)) (emphasis added).

Rather, federal courts in North Carolina and throughout the country have consistently held that "[w]here a state law is more beneficial to an employee than the [FLSA], the state law must apply." *Maldonado v. Int'l Bus. Machines Corp.*, 56 F.R.D. 452, 455 (D.P.R. 1972)(citing 29 U.S.C.A., § 218 and *Laborde v. E. Sugar Assocs.*, 81 D.P.R. 478 (Aug. 11, 1959); *see also In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.*, 2021 WL 374976, at *6; *Mebane v. GKN Driveline N. Am., Inc.*, No. 1:18CV892, 2020 WL 6525820, at *5 (M.D.N.C. Nov. 5, 2020) ("Even in FLSA's core area of protection—minimum wage and overtime regulation—it does *not* completely pre-empt state laws but only pre-empts them to the extent that they are less generous than FLSA.") (internal citations and alterations omitted).

  i.  *The FLSA Establishes Minimum Wage Requirements for Employers that Meet Enterprise Coverage Under the FLSA.*

The FLSA applies to employers who meet the enterprise coverage requirements. Specifically, employers are subject to enterprise coverage if they are engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), and in that said enterprise has had an annual gross volume of sales made or business done of not less than $500,000. *See id.* If covered by the FLSA, the FLSA mandates employers pay a *minimum* hourly rate of $7.25 per hour and overtime in the amount of one-and-one half times an employee's

regular rate for each hour their employees work in excess of 40 per week. *See* 29 U.S.C. §§ 206(a)(1) and 207(a)(1); *see also Calderon v. GEICO Gen. Ins. Co.,* 809 F.3d 111, 121 (4th Cir. 2015). Significantly, though, if an employer does *not* make in excess of $500,000 in annual gross sales, it would *not* fall within the purview of the FLSA.[9] Here, it is indisputable that Defendant-Appellee was subject to the FLSA because its annual gross sales were more than $500,000.00 and it is engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r). JA4048.[10] However, Defendant-Appellee's statutory obligations pursuant to the FLSA does not negate its obligation to comply with the *more* stringent and applicable state wage and hour law, the NCWHA.

## B.    The NCWHA Statutory Authority

i.    *The NCWHA Imparts Greater and Distinct Protections Not Available Under the FLSA, Permitting Plaintiff-Appellant to Rely on Defendant-Appellee's Written Policies Relating to Compensation As A "Promise"; Thus, Defendant-Appellee's Written Compensation Policies Should Control, And the District Court Should Have Construed Potential Ambiguities Against Defendant-Appellee.*

---

[9] Even when there is no enterprise coverage, employees are protected by the FLSA if their work regularly involves them in commerce between States. *See* 29 U.S.C. § 206(a)(1).

[10] About Us, Butterball, https://www.butterball.com/about-us (last accessed Dec. 11, 2024) (explaining Butterball is the "most recognized" turkey brand in the United States). Roy Graber, Butterball net sales, net income drop in Q1 2024, WATTPoultry,                                        https://www.wattagnet.com/broilers-turkeys/turkey/article/15670225/butterball-net-sales-net-income-drop-in-q1-2024 (last accessed Dec. 11, 2024) (explaining Butterball's "operating income for the [first] quarter [of 2024] was reported at $16 million[. . .]").

23

To ensure there is no overlap regarding *statutory* minimum wage and overtime obligations pursuant to *both* the FLSA and the NCWHA, the NCWHA provides the following statutory exemption:

> The provisions of G.S. 95-25.3 (Minimum Wage), G.S. 95-25.4 (Overtime), and G.S. 95-25.5 (Youth Employment), and the provisions of G.S. 95-25.15(b) (Record Keeping) as they relate to these exemptions, ***do not apply to***: (1) Any person employed in an ***enterprise engaged in commerce or in the production of goods for commerce as defined in the Fair Labor Standards Act***[.]

*See* N.C. Gen. Stat. § 95-25.14(a)(1). Apart from *this* statutory exemption, however, the NCWHA invokes a fundamental requirement imposed on *all* North Carolina employers, to advise their employees *at the time of hiring and in writing*, regarding 'promised' wages *and* compliance with the same. *See* 13 N.C. Admin. Code 12.0805:[11]

> a. Employers *shall* satisfy the notice requirements of G.S. 95-25.13(2) by posting or making available to its employees in writing all policies and practices relating to *promised* wages in a manner, place and time which ensures that employees have ready access to those policies and practices throughout their tenure with the employer and are able to use that information.
> b. Acceptable means of ensuring that the policies and practices are readily accessible to the employees include, but are not limited to: . .
>
> > 1. Providing employees with an up-to-date employee handbook or other written statement of policies and practices with regard to *promised* wages;

---

[11] The FLSA has no similar requirement. *See generally* 29 U.S.C. § 201, *et seq.*

     2. Providing employees with payroll records, ***including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from the payroll records***.

*See id*.; *see also* 13 N.C. Admin. Code 12.0307(b)-(c) ("Employers shall notify employees of the employers' policies and practices concerning pay. . . ***Ambiguous policies and practices <u>shall</u> be construed against the employer and in favor of employees.***") *See also Gene Guhne, v. Ceridian HCM, Inc*., No. 1:20-CV-925, 2021 WL 1165328, at *6 (M.D.N.C. Mar. 26, 2021) ("it is unambiguous that a condition to receiving certain commissions is to remain employed with Ceridian through the one-year period following the first billing event.")

     Contrary to the NCWHA's notice requirements as stated *supra*, in *Wai Man Tom v. Hosp. Ventures LLC*, this Court found there was "nothing in the [FLSA] statutes or regulations that preclude[d] [defendant] from pursuing *all* available avenues of *FLSA* compliance." 980 F.3d 1027, 1036 (4th Cir. 2020) (emphasis added).[12] By contrast, the NCWHA's notice requirements *explicitly* require employers to fulfill their 'contractual' obligation consistent with written employment agreements, handbooks, job announcements, and/or paystubs regarding promised wages *and* allowing a separate recovery through the Payday Statute to ensure compliance with such promises *and* allowing ambiguities to be construed

---

[12] Plaintiff-Appellant's counsel was counsel for appellant-petitioner in *Tom*.

against the employer. *See* N.C. Gen. Stat. §§ 95-25.6, 95-25.13, and 95-25.22(a). Importantly, "where there are intentional differences in the language of the North Carolina statutes, or whether the laws of [North Carolina] require a *different* interpretation, the federal decisions will *not* be binding. . .." 13 NCAC 12.0103; *see generally Driskell, Inc*., 828 F. App'x at 871.

Here, Plaintiff-Appellant specifically pled that he had relied on Defendant-Appellee's written policies and/or practices such as paystubs in determining that Defendant-Appellee promised to pay him an "hourly" rate and time and one-half for hours over 40 per week. *See generally* JA126-150.[13]    Indeed, despite Plaintiff-Appellant's inability to speak English,[14] because most paystubs are commonly understood to contain the word "Rate" as synonymous with "Hourly Rate," Plaintiff-Appellant reasonably understood this to mean $18.54 "per hour" *not* "piece-rate." JA136-137, JA2433-2434.   On the other hand, despite the district court's finding that "LoadTrip" *unambiguously* meant "piece-rate," nothing in the paystub indicated that "LoadTrip" was defined or synonymous with "piece-rate." JA68-69, JA114-117, JA122-125, JA210-212, JA214-216.  Significantly, Plaintiffs-Appellants

---

[13] Importantly, however, Plaintiff-Appellant's recollection of hours worked (which indicated 6:30 pm to 9:30 am the next day), did *not* coincide with Plaintiff-Appellant's noted hours worked on the paystub. JA68-69, JA126-151.

[14] In fact, the majority of Defendant-Appellee's written policies specifically for turkey catchers (i.e., job description, handbook, written policies, and paystubs) were predominantly provided in Spanish *and* referred to turkey catchers as "hourly" employees.  JA860-892, JA2853-3356.

26

admitted they did not understand the meaning of "Load Trip." JA2154, JA3437, JA3601, JA3615. As such, it is not unreasonable that Plaintiff-Appellant, (a non-English speaker) would be unable to read *and* understand that "Load Trip" meant "piece-rate." *See* JA68-69, JA114-117, JA122-125, JA210-212, JA214-216.

Yet, notwithstanding the factual disputes between the Parties regarding information reflected on Plaintiff-Appellant's paystub(s), *at every turn*, the district court resolved such factual disputes in *Defendant-Appellee's* favor: "Figueroa has not plausibly alleged a violation of section 95-25.13. . . the paystub is *not* ambiguous. It provides for piece-rate compensation and overtime." JA131-137, JA114-117, JA122-125, JA152-155, JA210-212, JA214-216, JA240-241. Plainly, irrespective of the Parties' conflicting facts, the district court ruled on the merits and dismissed Plaintiff-Appellant's NCWHA claims, preventing the parties from proceeding with discovery. JA108-125, JA199-217, JA281-282. Thus, the district court's dismissal of Plaintiff-Appellant's NCWHA claims should be reversed.

   a. The NCWHA's "Payday" Statute Allows the Recovery of All Promised Wages Irrespective of the FLSA's Overtime Requirement.

District courts have permitted countless employees to seek recovery of ***all*** wages, including unpaid earned and accrued promised overtime under the NCWHA. *See Daniel v. Stericycle Inc.*, 2022 WL 987341, at *2 (W.D.N.C. Mar. 31, 2022). The *Daniel* district court stated the following:

27

First, the *plain* language of N.C. Gen. Stat. § 95-25.14(a)(1) exempts overtime claims under N.C. Gen. Stat. § 95-25.4. The statute by its terms does *not* exempt claims under N.C. Gen. Stat. § 95-25.6.[15] Additionally, the basis of each of the claims is different. On the one hand, the basis of any overtime claim under N.C. Gen. Stat. § 95-25.4 is to receive pay at time and one half for hours worked over 40 [per week]. On the other hand, ***the basis of a claim under N.C. Gen. Stat. § 95-25.6 is to receive pay for wages accrued but <u>not</u> paid. The wages at issue are 'accruing' to hourly-paid employees within the meaning of N.C. Gen. Stat. § 95-25.6 . . . regardless of whether these employees were also owed overtime pay*** . . .

*See Daniel*, No.320CV0065RJCDCK, 2022 WL 987341, at *2 (*citing Laurence*, No. 3:17CV00602RJC-DSC, 2018 WL 10058688, at *3; *Irwin v. Fed. Express Corp.*, No. 1:14-CV-00557, 2016 WL 7053383, at *8 (M.D.N.C. Dec. 5, 2016) ("Earned wages are those wages and benefits due when the employee has <u>actually performed the work</u> required to earn them." (*quoting Whitley v. Horton*, No. COA03–1459, 2005 WL 351143, at *5 (N.C. Ct. App. 2005); *Mebane v. GKN Driveline N. Am., Inc.*, 499 F. Supp. 3d 220, 227-28 (M.D.N.C. 2020) (§ 95-25.14 *did not exempt* plaintiff's payday claims brought pursuant to § 95-25.6 for *all* unpaid wages, including wages for off-the-clock work that resulted in plaintiff working more than forty hours per week);[16] *Torres-Tinajero v. Alpha Constr. of the Triad, Inc.*, No.

---

[15](citing *Roldan v. Bland Landscaping Co.*, No. 3:20CV00276-KDB-DSC, 2022 WL287549, at *3-4 (W.D.N.C. Jan. 31, 2022) (Bell, J.) (denying defendant's request to dismiss payday (including earned, accrued, and unpaid straight and overtime wage claims under § 95-25.6 because it is *not* exempted by the *plain* terms of § 95-25.14(a)(1))).

[16] Undersigned counsel was undersigned counsel in *Mebane, Daniel, and Roldan*.

1:18CV160, 2020 WL 5411748, at *4 (M.D.N.C. Sept. 9, 2020) ("[T]he payday claim is designed to protect employees who did not receive the pay owed to them *independent* of the overtime rate required by the FLSA.").[17]

Specifically, Plaintiff-Appellant brought claims pursuant to N.C. Gen. Stat. § 95-25.6 for earned, accrued, and unpaid wages related to an undercalculation of hours worked, resulting in unpaid *promised* straight time *and* premium and/or overtime wages, not to mention *prejudgment interest*, which is *not* recoverable under the FLSA. JA126-151, JA218, JA220-244. Because Plaintiff-Appellant properly

---

[17] *See also Charlot v. Ecolab, Inc.,* 97 F.Supp.3d 40, 67 (E.D.N.Y. 2015) ("Unlike North Carolina overtime claims, payday claims are not preempted by the FLSA pursuant to N.C. Gen. Stat. Ann. § 95-25.14(a)(1), which specifically limits such preemption to NCWHA's minimum wage, overtime and recordkeeping claims"); *Aguilar-Gamas v. Scott Farms, Inc.*, 2014 WL 12769404, at *3 (E.D.N.C. Jan. 6, 2014) ("There is no exemption in § 95-25.14 from the provisions of §§ 95-25.6, 95-25.13(1)-(2), or 95-25.22."); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 710 (E.D.N.C. 2011) ("plaintiffs' [] payday claims[] for regular hourly wages *and* overtime[] are neither preempted by the FLSA nor temporally limited in scope."); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 132 (E.D.N.C. 2011) ("[I]n every situation where defendants failed to pay the minimum wage, they also failed to pay the promised wage [because the company communicated what their earned wage would be] and therefore violated the NCWHA."); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 471 (E.D.N.C. 2010) (permitting claims brought pursuant to § 95-25.6, to proceed simultaneously with FLSA claims, where the payday claims included overtime pay); *Kramli v. Ann Crittendon, Inc.*, 2007 WL 9757835, at *2 (M.D.N.C. Dec. 17, 2007), *report and recommendation adopted*, 2008 WL 11492769 (M.D.N.C. Feb. 20, 2008) (holding § 95-25.6 is not covered by the exemption provisions laid out in § 95-25.14 and denying motion to dismiss); *Barton v. Pantry, Inc.*, 2006 WL 1367421, at *2 (M.D.N.C. May 17, 2006) ("[B]ecause the exemption contained in [§ 95-25.14] is specific to minimum wage and overtime claims, it does not preclude [p]laintiffs' claim under § 95-25.6[.]").

29

pled his NCWHA claims pursuant to N.C. Gen. Stat. § 95-25.6 and *not* pursuant to § 95-25.3 or § 95-25.4 (JA126-151, JA218, JA220-244), Plaintiff-Appellant's NCWHA claims should be reinstated.

**C.    The District Court Erroneously Dismissed Plaintiff-Appellant's NCWHA Claims Despite A Private Right of Action Pursuant to § 95-25.22 to Recover All Earned, Accrued, and Unpaid Wages Pursuant to N.C. Gen. Stat. § 95-25.6.**

Categorically, Plaintiff-Appellant's Payday Claims consistent with the full entitlements provided under § 95-25.22(a) allow Plaintiff-Appellant to recover *all* promised wages pursuant to § 95-25.6 (regardless of whether such promise may include promised "overtime" wages) *plus statutory interest*.[18] While Plaintiff-Appellant does not seek duplicative recovery of wages for the same activity, Plaintiff-Appellant seeks to recover *all* entitlements afforded to him under the NCWHA, *including prejudgment interest*, which is *not* available to him for recovery of FLSA overtime claims. *See* the FLSA *generally*. In other words, Plaintiff-Appellant's Payday claims seek recovery of all straight-time wages (calculated using the promised rate documented on Plaintiff-Appellant's paystubs) for all *actual* hours

---

[18] Pursuant to N.C. Gen. Stat. § 95-25.22(a), employers who violate the same "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, their unpaid overtime compensation, or their unpaid amounts due under G.S. 95-25.6 through 95-25.12, as the case may be, plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due. Similarly, N.C. Gen. Stat. § 95-25.22(a)(1), in addition to, the amounts awarded pursuant to subsection (a) of this section, the court *shall* award liquidated damages in an amount equal to the amount found to be due as provided in subsection. . .

worked under 40 per week, all premium wages for hours worked in excess of forty

(40) per week (calculated at one-and-one-half times the promised rate documented

on Plaintiff-Appellant's paystubs, *regardless* of whether the FLSA would require

statutorily required overtime wages) because Plaintiff-Appellant *actually* performed

the work, by working almost fifteen (15) hour days and sometimes longer. JA133,

JA1426.    Thus, Plaintiff-Appellant performed the work required to earn the

promised straight *and* premium wages for hours over 40 per week. JA132-133,

JA946-947, JA4005-4006. In comparison, Plaintiff-Appellant's FLSA claim would

only afford Plaintiff-Appellant overtime wages, which, depending on the calculation

ultimately determined to be applicable, would still be *less* than the afore-described

promised wages under the NCWHA. JA132-133, JA946-947, JA4005-4006. By

dismissing *all* of Plaintiff-Appellant's NCWHA claims, the district court improperly

deprived Plaintiff-Appellant of the opportunity to prove he was *promised* an hourly

rate for work *actually* performed for hours worked up to forty in a week, a *promised*

premium rate of one-and-one-half times the promised hourly or straight-time rate,

*and statutory interest* for all *earned*, *unpaid*, and *accruing* wages.[19] JA 938-954,

JA1445-1447, JA4005-4006.

---

[19] *See Scruggs v. Skylink Ltd.,* 2011 WL 6026152, at *9 (S.D. W. Va. Dec. 2, 2011)
("It is well established that the FLSA, in its core areas of protection—minimum
wage and overtime regulation—has a relatively narrow preemptive effect as it does
*not* completely preempt state laws but only preempts them to the extent that they are
less generous than the FLSA.")

Similarly, the district court noted Plaintiff-Appellant's NCWHA Payday claims, for hours *not* over (40), could proceed if Plaintiff-Appellant alleged a separate and distinct claim from the FLSA. JA215. However, the district court found that Plaintiff-Appellant's allegations that Defendant-Appellee failed to compensate him at his straight-time promised hourly rate of $18.08 to be "implausible" considering that his paystubs in the record [did] not contain the number "18.08" and Plaintiff-Appellant provided no explanation for why his hourly rate would fluctuate between $18.08 and $18.54 per hour. *See* JA214-216. Seemingly, the district court misunderstood Plaintiff-Appellant's pleadings with regards to his promised rate of pay between 2017 with an hourly rate of $18.08 and his 2018 hourly rate of $18.54. *See* JA215 (inferring Plaintiff's hourly rate fluctuated rather than Plaintiff-Appellant receiving a raise during his multi-year employment). To clarify, Plaintiff-Appellant *never* asserted his hourly rate *fluctuated* from week to week, but rather, Plaintiff-Appellant's pleadings repeatedly state the applicable hourly rate promised to Plaintiff-Appellant was the rate listed on his paystubs. *See* JA135, JA136, JA147.[20] As evidenced by the additional paystubs, Defendant-Appellee *promised* Plaintiff-

---

[20] Nevertheless, Plaintiff-Appellant produced a paystub, with his motion for reconsideration (JA218-246) showing he was in fact paid at an hourly rate of $18.08 per hour during the earlier years of his employment with Defendant-Appellee, which is consistent with his recollection of what he was offered at the time of his interview. *See id*. Other paystubs in the record also confirmed that during subsequent pay periods Plaintiff-Appellant was compensated at $18.54 per hour. JA157-160.

Appellant a fixed hourly rate, as documented on his paystubs, which *did* increase, from $18.08 to $18.54 over the course of Plaintiff-Appellant's multi-year employment with Defendant-Appellee. *Compare* JA218-246 *with* JA157-158.

Given this *separate and distinct* private right of action for all promised wages, including, but not limited to for all hours worked and premium wages for hours worked in excess of forty (40) per week, the district court improperly overextended the limited exemptions provided in § 95-25.14 to *all* promised wages and disregarded the *many* applicable statutes and administrative codes that outline the strict requirement on employers to compensate *promised wages* and the resulting private right of action for promised wages. In light of the various statutory and regulatory provisions, explained *supra*, an accurate reading of Plaintiff's factual allegation support a reinstatement of Plaintiff-Appellant's NCWHA claims.

## II.    THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S 12(B)(6) MOTION TO DISMISS.

### A.    <u>The District Court Improperly Considered Extrinsic Evidence Contrary to Guidance by this Court Regarding 12(b)(6) Motions.</u>

The Fourth Circuit has made clear a motion to dismiss "should not be granted unless the plaintiff can prove no set of facts to support the claim and entitle the plaintiff to relief." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The Federal Rules of Civil Procedure "require[] only '*a short and plain statement of the claim* showing

the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In reviewing the sufficiency of the complaint, the [district court] "must accept as true all well-pleaded allegations and must *construe* the factual allegations in the light most favorable to the plaintiff." *Randall*, 30 F.3d at 522. Ultimately, a court should evaluate the complaint in its entirety. *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 825 (4th Cir. 2010). However, "the court does not consider evidence outside the pleadings in deciding a Rule 12(b)(6) motion." *See Lambeth v. Carolina Pers. Co.*, 358 F. Supp. 2d 484, 486 (M.D.N.C. 2005). The court may consider, however, documents *attached to the complaint as exhibits*, and documents attached to a motion to dismiss if the documents are integral to the complaint, ***and there is no dispute about the documents' authenticity***. *Decoster*, 119 F.4th at 336.

i. *The District Court Erroneously Considered Defendant-Appellee's Extrinsic Evidence (Plaintiff-Appellant's Pay Stubs), Acknowledged the Parties' Disputed Terms And Ignored Wage Discrepancies Contained Therein, Resulting An Improper Dismissal of Plaintiff-Appellant's NCWHA Claims.*

While the district court erroneously considered extrinsic evidence and disputed terms contained therein, (JA110, JA211-216), the selected paystub demonstrates *significant* discrepancies. JA68-69, JA157-158. For example, the district court analyzed a pay stub for Plaintiff-Appellant during the week of January

34

15, 2018 through January 21, 2018, indicating Plaintiff-Appellant had worked 66.18 hours and earned a gross total of $1,382.15 for that pay period. JA110, JA211-216. Despite factual allegations contained in Plaintiff-Appellant's complaint that he worked collectively an average of approximately fifteen (15) hours daily and sometimes more when there were vehicle breakdowns, the district court ignored the same. JA79-80, JA118-122, JA132-134, JA157-158, JA211-216.

Specifically, when analyzing the pay stub against the backdrop of the NCWHA requirements as described above, another finding is warranted. JA118-122, JA214-216. Specifically, it may be assumed that "Rate," which is commonly referred to as "Hourly Rate," related to Plaintiff-Appellant's hourly rate of $18.54 per hour and multiplying the same by 66.18 hours totals $1,226.97 in straight time earnings. *See* JA85-86, JA110, JA116-117, JA68-69, JA157-158, JA211-216, JA277-279. Because straight-time earnings have been calculated, it is appropriate to calculate the additional half-time by taking $18.54 and multiplying by half-time (.5) or ($9.27 per hour) then multiplying the half-time rate by 26.18 (hours in excess of 40 per week). JA68-69, JA157-158. At bottom, while the district court should *not* have considered such extrinsic evidence, a mere review of this paystub *alone* demonstrates Plaintiff-Appellant's *earned* overtime wages[21] should have been

---

[21] Plaintiff-Appellant vehemently disputes that such hours reflected on his pay stubs *accurately* reflected his actual hours worked because given his recollection of estimated hours worked, he typically worked much more than 66.18 hours per week.

$242.68 *not* $234.53 for a total amount of $1,469.65 ($1,226.97 + $242.68). which

is contrary to the district court's findings that "overtime premium exceeds what the

regulations require." JA116.[22]  In essence, Defendant-Appellee underpaid Plaintiff-

Appellant by $87.50 ($1469.65 - $1382.15 – (as reflected on the paystub)).[23]  JA68-

69, JA157-158.  Therefore, given the factual disputes including, but not limited to,

Defendant-Appellee's underpayment of Plaintiff-Appellant's hours worked for

even those (disputed) hours worked contained on *this* paystub, the district court

improperly considered the disputed extrinsic evidence contrary to the 12(b)(6)

standard of review, thereby erroneously granting Defendant-Appellee's motion to

dismiss.

### III.   DISMISSAL OF PLAINTIFF-APPELLANT'S NCWHA CLASS CLAIMS SHOULD BE REVERSED AND AN OPPORTUNITY TO MOVE FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23, SHOULD BE REINSTATED.

#### A. The District Court Should Have Permitted Discovery In This Case Regarding Plaintiff-Appellant's NCWHA Claims.

Where the nonmoving party has not had the opportunity to discover

information essential to its opposition, the district court must refuse 12(b)(6)

---

[22] Similarly, the district court's calculations of Plaintiff-Appellant's paystub also revealed that Defendant-Appellee had underpaid Plaintiff-Appellant, and yet, still granted Defendant's motion for summary judgment.  JA212-214, JA4060-4062.

[23] However, because Plaintiff-Appellant has consistently asserted working an average of fifteen (15) hours daily, Plaintiff-Appellant's calculation of earned, accrued and unpaid wages greatly exceeds this amount. *See* JA 4005-4006.

dismissal and/or summary judgment. *See Total Renal Care of N. Carolina, L.L.C. v. Fresh Mkt., Inc.,* 457 F. Supp. 2d 619, 623 (M.D.N.C. 2006) (finding the plaintiff was entitled to limited discovery relating to issues in a motion to dismiss, and that resolution was more appropriate at the summary judgment stage); *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (citing *Anderson,* 77 U.S. at 250). The inability to pursue discovery should preclude the granting of dismissal or summary judgment "[w]hen the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues [] are involved." *Harrods Ltd. V. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citing *First Chicago Int'l v. United Exchange Co.*, 836, F2d 1375, 1380-81 (D.C. Cir. 1988)).

Like in *Harrods*, Plaintiff-Appellant here notified the district court of the need for more discovery, generally as it relates to the NCWHA claims. JA239-243, JA321-337. By ignoring Plaintiff-Appellant's request to permit discovery and viewing evidence in the light most favorable to Defendant-Appellee, the district court committed reversible error. Therefore, the district court's dismissal of Plaintiff-Appellant's NCWHA claims should be reversed.

      i.     *Should this Court Reverse and Remand for Further Proceedings, Plaintiff-Appellant Respectfully Requests That His Anticipated Motion for Class Certification pursuant to Fed. R. Civ. P. 23(A) and (B)(3) and North Carolina Wage Hour Act ("NCWHA") be Reinstated for Further Proceedings And Plaintiff-Appellant and Opt-in Party Plaintiffs*

*Continue to Proceed as a Collective Pursuant to the FLSA Through Trial.*

Should this Court find error in the district court's ruling and reverse its decision, Plaintiff-Appellant respectfully requests this Court reinstate Plaintiff-Appellant's opportunity to move forward with his *anticipated* motion for class certification pursuant to Fed. R. Civ. P. 23(A) and (B)(3) of the NCWHA for the sake of judicial efficiency as the issues would no longer be moot and remain relevant to Plaintiff-Appellant's NCWHA class action claims. Additionally, because the district court did *not* decertify Plaintiff-Appellant's FLSA collective, should this Court remand for further proceedings, Plaintiff-Appellant requests that Opt-in Party Plaintiffs be permitted to continue to participate in this matter through trial.

**IV.  THE DISTRICT COURT IMPROPERLY DISREGARDED 29 C.F.R. §778.318 AND 29 C.F.R. §778.415 BY IMPROPERLY WEIGHING THE EVIDENCE DESPITE A GENUINE ISSUE OF MATERIAL FACT CONCERNING THE EXISTENCE OF A "CLEAR AND MUTUAL UNDERSTANDING" THAT PLAINTIFF-APPELLANT, AND THOSE SIMILARLY SITUATED WERE TO BE PAID PIECE-RATE FOR ALL HOURS WORKED, INCLUDING FOR NON-PRODUCTIVE HOURS WORKED.**

**A.  <u>A Genuine Issue of Material Fact Remains Regarding Whether the Plaintiffs-Appellants Agreed to a Piece-Rate Compensation System.</u>**

Although there are few, if any, cases defining what "agreement" is required, as used in § 778.318(b) or (c), courts have generally relied on interpretations of the "clear mutual understanding" requirement of § 778.318(c). *See* JA4048. In doing so, courts look to whether such agreement may be inferred from the parties' conduct,

38

whether the company maintained a policy, practice, or procedure outlining such explanations, or provided oral notification of the compensation system. JA4048.

Here, Plaintiffs-Appellants themselves confirmed they believed they were entitled to hourly pay based on a promise communicated through Defendant-Appellee's policies, paystubs, and *other* communications.[24] In determining that Plaintiff-Appellant was subject to a piece-rate compensation system, the district court ignored the requirement that there must be an agreement or understanding arrived at for a piece-rate compensation system to apply. JA4048 (citing 29 U.S.C. § 207(g)) ("Piece-rate compensation is lawful when it is 'pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work.'"). Moreover, given the dispute between whether Plaintiffs-Appellants agreed or understood they were compensated by piece-rate, a genuine issue of material fact remained, precluding the district court from granting summary judgment. *See* JA4048-4054.

i.    *The district court Improperly Utilized Plaintiff-Appellant's First Two Complaints Served as Rebuttable Evidence.*

In granting Defendant-Appellee's Motion for Summary Judgment, the district court considered factual allegations in Plaintiff-Appellant's original and First Amended Complaints. JA4049. More specifically, the district court held that

---

[24] *Supra* pages 13-15

because Plaintiff-Appellant alleged he was compensated via a piece-rate compensation system in his first two complaints, such statements could serve as *rebuttable* evidence that Plaintiff-Appellant agreed to, and understood, he was compensated by piece-rate, rather than hourly. JA4049-4054. However, the district court did not use such evidence as *rebuttable* evidence, and instead, used Plaintiff-Appellant's superseded Complaints as <u>*irrebuttable*</u> evidence that Plaintiff-Appellant understood and agreed he was compensated by piece-rate. JA4049-4054.

The Fourth Circuit has scarcely addressed whether superseded complaints may be used as rebuttable evidence in *Goodman v. Diggs,* cited by the district court in its Summary Judgment Order. JA4049 (citing 986 F.3d 493 (4th Cir. 2021)). As a matter of first impression, the Fourth Circuit held in *Goodman* that "an amended complaint does not divest an earlier verified complaint of its evidentiary value as an affidavit at the summary judgment stage." 986 F.3d at 499. In holding so, the Fourth Circuit found the district court erred in not considering superseded complaints, which were verified and based on the plaintiff's *personal* knowledge, as the "equivalent of opposing affidavits." *See id*. Moreover, the Fourth Circuit held that the only way it could reverse the district court's grant of summary judgment was if the district court procedurally erred in overlooking the superseded complaints, and if "**those complaints placed material facts in dispute, thereby making summary judgment inappropriate as a *substantive* matter**." *See id*.; *see also 188 LLC v.*

40

*Trinity Industries, Incorporated,* 300 F.3d 730, 736 (7th Cir. 2002) (finding that while earlier versions of an opponent's pleadings could be used "as evidence of the facts therein [. . .] they are **not judicial admissions, and the amending party may offer evidence to *rebut* its superseded allegations.").**

Given the seldom authority on this matter in the Fourth Circuit, it is essential to look to *additional* case law to determine exactly what using a superseded complaint as "rebuttable evidence" indicates. Much more akin to the facts here, in *Huey v. Honeywell, Incorporated,* the plaintiff *admitted* in its initial answers and pleadings that he was hired as a just cause employee. 82 F.3d 327, 333 (9th Cir. 1996). However, in later complaints, the plaintiff denied this same allegation. *Id.* The ninth circuit determined that the previous statements from earlier superseded complaints could still act as admissible evidence, *however*, such statements were *not* considered conclusive and could be rebutted by additional evidence. *See id.* As such, the *Huey* court, viewing the evidence in the light most favorable to the nonmoving party—the plaintiff--found that there remained a clear issue of material fact concerning the plaintiff's employment status, thus precluding summary judgment. *Id.* (finding the lower court erred in granting summary judgment given the plaintiff's "admissions  in its initial [pleadings] create[d] a genuine issue of material fact with respect to Huey's employment status.").

Here, the district court incorrectly applied the standard of "rebuttable evidence," by accepting Plaintiff-Appellant's superseded complaints as substantive evidence that Plaintiff-Appellant agreed, and understood, he was being compensated by piece-rate. JA4048-4054. Essentially, the district court incorrectly converted Plaintiff-Appellant Figueroa's superseded allegations as judicial admissions, rather than as rebuttable evidence given the immense evidence in the record disputing Plaintiff-Appellant's superseded allegations. JA4048-4054. In Plaintiff-Appellant's SAC, Plaintiff-Appellant explained that he understood he was paid hourly. JA126-151, JA4048. Similar to the *Huey* decision, in light of the conflicting evidence, the district court should have denied summary judgment given the clear issue of material fact remaining regarding Plaintiff-Appellant's compensation scheme. JA283-303, JA2841-3356, JA126-151, JA4048-4054.

> ii.   *Even if Piece-Rate Compensation Applies, Defendant-Appellee Failed to Properly Pay Plaintiffs-Appellants Overtime At the Time-and-a-Half Rate, As Required by 29 C.F.R. §778.318 and 29 C.F.R. §778.415.*

29 C.F.R. § 778.318 makes clear that to pay employees at only a *half-time rate,* employers must make ***clear*** the compensation system is intended to compensate employees for all hours worked, the productive as well as the nonproductive hours. *Alston v. DIRECTC, Incorporated*, 254 F.Supp.3d. 765, 796 (D.S.C. 2017) (indicating it is a prerequisite for an employer to ensure employees understand the compensation system is compensating them for nonproductive hours) (citing

*see Hall v. DIRECTV, LLC,* 846 F.3d 757, 773 (4th Cir. 2017) ("A piece-rate system is permissible under the FLSA ***only where the parties agree*** that all of an employee's hours, including nonproductive hours, are compensated and included in the employee's total working time and where the employer continues to comply with the statute's overtime provisions.") (emphasis added)); *see also Espenscheid v. DirectSat USA, LLC*, No. 09–cv–625–bbc, 2011 WL 10069108, at \*28 (W.D. Wisc. April 11, 2011) (an employer can pay half-time rates for overtime "***only if the employer and the employees reach an agreement that the piece-rate will compensate the employees for all hours worked, including nonproductive hours***"). This agreement need not be in writing, however, "the parties must [also] agree that the employer is compensating the employee for all hours worked, *including nonproductive hours*." *See* Dkt. 21, at 6 (citing *see Amador v. Guardian Installed Servs. Inc*., 575 F. Supp. 2d 924, 929 (ND. Ill. 2008); *cf. Griffin,* 142 F.3d at 716 ).

Simply put, if the employer fails to make it clear to employees that the piece-rate compensation system is intended to compensate for *both* productive and nonproductive hours, the employer must compensate employees' overtime at the time-and-a-half rate, rather than the half-time rate. *See id*.; *see also* 29 C.F.R. § 778.318; *Espenscheid*, 2011 WL 10069108, at \*28 ("[A]n employer is permitted to pay overtime to pieceworkers at half-time rates *only* if the employer and the employees reach an agreement that the piece-rate will compensate the employees for

43

all hours worked, including nonproductive hours. 29 C.F.R. § 778.318(c)). In the absence of such an agreement, the employee is owed compensation "at a rate at least one and one-half times the [regular] rate for hours in excess of 40.") (citing 29 C.F.R. § 778.318(b); 29 U.S.C. § 201(a)(1)). Evidence supporting that there is no agreement that the piece-rate compensation system is intended to compensate for ***both*** productive and nonproductive time may include that the employer compensates employees at different rates for unproductive time, such as "by paying [employees] an hourly wage for certain tasks." *Espenscheid*, 2011 WL 10069108, at *28.

Where there are disputed issues of fact concerning "whether [the employer] and [employees] agreed that the piece-rate compensation system would compensate [employees] for both productive and nonproductive time," the district court must deny summary judgment. *See id.* (" Because a jury could draw inferences in favor of either party on this issue, summary judgment is not appropriate."); *see also Alston*, 254 F.Supp.3d at 796 ("Where a genuine dispute remains regarding whether the parties agreed to subsection (c)'s calculation method or whether the employee understood that his nonproductive hours would be compensated by wages for productive hours, summary judgment should not be granted.") (citations omitted).

Evidence supporting that a genuine issue of material fact remains includes where "[s]everal [employees] testified they were not sure how their pay was calculated and that they complained to supervisors about not being paid for

nonproductive tasks." *See id*. Other evidence that there was *no* agreement includes that the employer's policies fail to advise employees that they are being paid for both productive and nonproductive time through a piece-rate compensation system. *See id*. For example, in *Espenschied v. DirectSAT USA, LLC*, because there were no such policies, and because there was conflicting evidence regarding whether the employees knew they were being compensated for *both* productive and nonproductive time, the court denied summary judgment to both the plaintiff and defendant, holding that a jury could find in either's favor. *See id*. at *30.

Similarly, in *Alston v. DIRECTV, Incorporated*, the district court of South Carolina found that the defendant failed to adduce evidence that the plaintiffs agreed to an agreement stating they understood their compensation covered their nonproductive time worked. 254 F.Supp.3d at 796. The *Alston* court made this determination despite a memorandum produced by the defendant which advised plaintiffs of the piece-rate compensation system because the defendant failed to produce evidence that any of the plaintiffs reviewed the memorandum, understood or agreed to it. *See id*. at 796-97. Rather, because the memorandum made no specific mention as to whether the piece-rate compensation system would compensate plaintiffs for both productive and nonproductive time, and neither did the Q&A produced by the defendant, the court held there were genuine issues of material fact, denying summary judgment. *See id*. at 798.

iii.    *The district court Ignored The Lack of Evidence Presented Supporting the Plaintiffs-Appellants Agreed That Any Piece-Rate Compensation System Would Compensate Them for* **Both** *Productive and Non-Productive Time.*

Here, the district court made *zero* inquiry into whether such requirements were met. *See generally* JA4040-4063. Rather, the district court merely disposed of Plaintiff-Appellant's arguments, finding "[e]ven viewing the record in the light most favorable to [Plaintiffs-Appellants], no reasonable jury could find that Butterball improperly calculated [Plaintiffs-Appellants'] overtime compensation as piece-rate employees." JA4061.  Notably missing from *any* of the evidence relied upon by the district court, however, is any evidence providing that Plaintiffs-Appellants agreed to a piece-rate compensation system that would compensate them for *both* productive and non-productive hours, as required by 29 C.F.R. §778.318 and 29 C.F.R. §778.415. *See generally* JA4040-4063. Despite this, the district court made no mention as to whether there remained an issue of material fact relating to whether there was an agreement based on how Plaintiffs-Appellants would be compensated for productive versus non-productive hours. *See generally* JA4040-4063.

Further, the district court failed to consider Defendant-Appellee's lack of *any* evidence showcasing that Plaintiffs-Appellants agreed or understood that any piece-rate compensation system would be compensating them for both productive and non-productive time. Rather, the *slim* evidence relied on by Defendant-Appellee to demonstrate Plaintiffs-Appellants agreed to a piece-rate compensation system in the

46

first place failed to advise Plaintiffs-Appellants on how they were being paid and
what their compensation covered. *See* JA2841-3353. Much like in *Alston* and
*Espenschied* there are absolutely no policies in the record advising Plaintiffs-
Appellants that their pay is for *both* productive and non-productive time. JA2841-
3353. To the contrary, several Plaintiffs-Appellants testified that they did not
understand how or what they were compensated for, and did not know whether they
were compensated for "waiting time." JA2374. In addition, the alleged offer letter
signed by Plaintiff-Appellant did *not* specify whether compensation was for *both*
productive and unproductive time, and only stated Plaintiff-Appellant would be paid
by piece. JA2841-2852. Similarly, Defendant-Appellee presented no testimony that
indicated Defendant-Appellee informed Plaintiffs-Appellants they were to be
compensated via a piece-rate compensation system that would compensate them for
both productive and nonproductive time. *See* JA2841-3353. As such, because there
are genuine issues of material fact concerning whether Plaintiffs-Appellants
understood or agreed to a piece-rate compensation system that would compensate
them for both productive and non-productive time, the district court improperly
granted summary judgment in favor of Defendant-Appellee. JA4048-4054.

## V. THE DISTRICT COURT ERRED IN IGNORING BINDING PRECEDENT FROM *ANDERSON V. MT CLEMENS* AND *PEREZ V. MOUNTAIRE FARMS* REGARDING PLAINTIFFS-APPELLANTS' RECOLLECTION OF HOURS WORKED AND THE COMPENSABILITY OF PRE- AND POST-SHIFT ACTIVITIES.

Pursuant to the Supreme Court case, *Anderson v. Mt. Clemens*, where an employer fails to maintain appropriate records, an employee can prove his FLSA claim if he can produce sufficient evidence to show the amount and extent of work by reasonable inference. *Id.* at 687. The Supreme Court held:

> Where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances.

*See id.* at 688.

On point, the Supreme Court considered the various preliminary activities employees performed when preparing for *productive* work to be compensable. *See id.* at 690-91 ("Since the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace, the time spent in these activities must be accorded appropriate compensation.").

*Perez v. Mountaire Farms*, reaffirmed *Mt. Clemens*, finding representative evidence could be used for individual plaintiffs, and it could be used for the class generally. 577 U.S. at 455-463. Importantly, the Supreme Court also allowed

48

employees to proceed with providing a mechanism so the court could determine which class members were harmed and which were not. *Id.* at 461.

A. **Plaintiffs-Appellants' Recollection of Hours Worked Conflicts With Defendant-Appellee's Records.**

    i.     *Plaintiffs-Appellants Testified They Completed Off-the-Clock Work, Rendering Defendant-Appellee's Pay Records Unreliable and Incomplete.*

Here, the district court wholly disregarded the compensability of activities performed by employees outside their shift and during their lunch breaks, departing from this Court's ruling in *Perez v. Mountaire*, 650 F.3d 350, 366 (4th Cir. 2011), reaffirming *Mt. Clemens and* discounting the test for *compensable* work. JA4055-4060. *Perez* indicated activities are "integral and indispensable" where: (1) the activities *are necessary* to the principal work performed and (2) the activities primarily benefit the employer. *Perez*, 650 F.3d at 366. Explicitly, *Perez* found that in addition to pre/post shift activities required by company policy, activities that are not explicitly required, but which are necessitated by the nature of the work satisfy the first prong, such as due to sanitation or safety. *Id.* at 366. Further, *Perez* found activities necessary for the safety and sanitation of the workplace to be for the primary benefit of the company. *Id.* at 367. These findings are consistent with the Supreme Court's holding in *Mt. Clemens*. 328 U.S. at 692-93.

Much like in *Perez*, Defendant-Appellee mandated employees complete an array of activities outside their shift including putting on Butterball issued coveralls

and boots, fueling the truck/van, picking up water, food, and/or supplies from the store and sanitizing the vehicle, which could take anywhere from fifteen (15) minutes to thirty (30) minutes. JA2148-2152, JA3542, JA2262, JA450-452, JA418, JA1160-1162, JA562, JA2269-2270, JA2132-2134, JA2149, JA2260-2261, JA3542.

**B.** **The District Court Misapplied the Readily Distinguishable Case *Integrity Staffing Sols. Inc. v. Busk*, Given Plaintiffs-Appellants' Work, Which is Indisputably Integral and Indispensable from Plaintiffs-Appellants' Work Duties.**

In rejecting Plaintiff-Appellant's argument that Plaintiff-Appellant's recollection of hours worked should control and in light of Plaintiffs-Appellants' testimony that they frequently worked off the clock, the district court relied on the Supreme Court's decision *Integrity Staffing Sols., Inc. v. Busk*. JA4058 (citing 574 U.S. 27, 31-33 (2014)). Specifically, the district court held in its Order granting Defendant-Appellee's Motion for Summary Judgment that the "alleged sporadic preshift activities [did not] render Butterball's records of [Plaintiffs-Appellants'] working hours 'inaccurate or inadequate.'" JA4058 (citations omitted).

Seemingly, the district court determined Plaintiffs-Appellants' off-the-clock work was *not* compensable pursuant to *Integrity Staffing. Id*. However, the facts of *Integrity Staffing* could not be more distinguishable from the present case. 574 U.S. 27. As discussed further in *Integrity Staffing*, after the *Mt. Clemens* decision, there was a flurry of litigation, resulting in Congress enacting the Portal-to-Portal Act

50

which focused on removing walking, riding, and traveling to the place of performance of principal activities as compensable. *See id*. at 32. Nevertheless, activities which were "integral and indispensable to the principal activities that an employee is employed to perform" remained compensable. *Id*. These activities are those which are an "intrinsic element" of the activity which the employee must perform. *Id*. As such, the Supreme Court clarified that:

> [T]ime spent by an employee in a chemical plant changing clothes would be compensable if he 'c[ould not] perform his principal activities without putting on certain clothes' but would not be compensable if 'changing clothes [were] merely a convenience to the employee and not directly related to his principal activities.'

*Id*. Unlike here, the plaintiffs in *Integrity Staffing* argued that security screenings were compensable activities pursuant to *Mt. Clemens*. *Id*. at 35. Based on the analogy above, the Supreme Court held these security screenings *were not* integral and indispensable to the plaintiffs' work duties as the plaintiffs were *not* hired to undergo security screenings, but rather to package products for shipment to Amazon customers *Id*. ("Integrity Staffing could have eliminated the screenings altogether without impairing the employees' ability to complete their work.").

To the contrary, here, Plaintiffs-Appellants off the clock work activities were integral and indispensable to Plaintiffs-Appellants' work duties, such as getting gas for the van they drove to pick up live turkeys from farms, the job Plaintiffs-Appellants were specifically hired to do, and to wash the van after picking up

turkeys, to ensure the process of retrieving turkeys remained sanitary. JA2148-2152, JA3542, JA2262, JA450-452, JA418, JA1160-1162, JA562, JA2269-2270, JA2132-2134, JA2149, JA2260-2261, JA3542. These are activities Defendant-Appellee *could not* eliminate without impairing the employees' ability to work, given activities such as getting gas for the truck are integral and indispensable to Plaintiffs-Appellants' duties of retrieving turkeys from farms. *Integrity Staffing Sols.*, *Inc.*, 574 U.S. at 35. Therefore, the district court erred in determining that Plaintiffs-Appellants' off-the-clock work was not compensable and that it did not render Defendant-Appellee's records inaccurate and/or inadequate. JA4055-4060.

## VI. THE DISTRICT COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY DISREGARDING THE FLSA'S 29 C.F.R. §778.104 THAT EVERY WORKWEEK STANDS ALONE AND THAT A WORKWEEK IS A FIXED, REGULARLY RECURRING PERIOD OF 168 HOURS, OR SEVEN CONSECUTIVE 24-HOUR PERIODS.

i. *The district court Ignored Defendant-Appellee's Admitted Discrepancies Regarding Time and Pay Records, in Addition to, Plaintiff-Appellant and Opt-in Plaintiffs' Recollection of Excessive Hours Worked Resulting in Unpaid Overtime Wages.*

Pursuant to 29 C.F.R. § 778.104, every workweek stands alone, and employers cannot shift or average employee's time from week to week. "This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis." 29 C.F.R. § 778.104.

In the present case, Plaintiff-Appellant pointed out a specific paystub and timesheet in the record during summary judgment briefing (JA3580-3581), which demonstrated explicitly that the number of hours Plaintiff-Appellant Figueroa worked during one workweek in January 2018, did *not* match the number of hours for which Plaintiff-Appellant Figueroa was paid. Rather, Plaintiff-Appellant Figueroa worked 15.43 hours *greater* than the number of hours for which he was allegedly paid. JA3580-3581. Defendant-Appellee's payroll manager Yvonne Sanderson categorized this same discrepancy as "troubling" during her deposition. JA1665. In opposition, Defendant-Appellee ignored testimony from its own witnesses and its own policies, which specifically provided that the applicable workweek begins on Sunday at 8:45pm and ends the next Sunday at 8:44pm. JA860-892, JA1176. Despite such explicit policy, Defendant-Appellee in its own briefing attempted to argue that there was no universe in which a turkey loader and catcher could be paid for two (2) Sundays in a given workweek. JA3855-3856. However, Plaintiffs-Appellants' work schedules, which fluctuated widely and depended on the distances to the farms, could require Plaintiffs-Appellants to start working much earlier than 8:45 pm, as early as 6:30 pm. JA674-675, JA3389-3390, JA3415-3417, JA3433-3435, JA3453-3458, JA3473-3475, JA3492-3494, JA3509-3512, JA3528-3533. But could begin as early as 6:30 pm. JA764-765, JA3389-3390, JA3415-3417, JA3433-3435, JA3453-3458, JA3473-3475, JA3492-3494, JA3509-3512, JA3528-

3533. Necessarily, contrary to Defendant-Appellee's assertions, in weeks where Plaintiffs-Appellants worked a Sunday evening shift at the start of the week, and, additionally, worked another Sunday evening shift the following Sunday, beginning earlier than 8:44 pm, any additional hours worked before 8:45 p.m. **must be accounted for in that same work week.** *See* 29 C.F.R. § 778.104. This is based on both Defendant-Appellee's policies setting the workweek from Sunday at 8:45 pm to the next Sunday at 8:44 pm, as well as 29 C.F.R. § 778.104, which provides that every workweek stands alone, and hours cannot be shifted from one workweek to the next in an attempt to avoid paying overtime.

The district court ***explicitly*** ignored these facts, and even more troubling, accepted Defendant-Appellee's false representation of the fact that the workweek ran from Sunday to Saturday, despite Defendant-Appellee's own ***written*** policies to the contrary. JA4045. Rather, the district court took no issue with the fact that the "AttendHR" noted on Plaintiffs-Appellants' paystubs did not match the number of hours for which Plaintiffs-Appellants were purportedly paid. JA4045. Therefore, the district court's disregard of 29 C.F.R. § 778.104 must be reversed and remanded for further proceedings.

## CONCLUSION

Overwhelmingly, Defendant-Appellee has failed to provide undisputed and affirmative evidence of material facts, and the district court failed to evaluate

properly all evidence and apply relevant law.  Based on the record and the argument presented herein, this Court should hold and affirm as follows:

(1)    The district court erred in dismissing Plaintiff-Appellant's NCWHA claims for promised unpaid straight and/or premium overtime wages pursuant to N.C. Gen. Stat's § 95-25.6 which is not inconsistent with N.C. Gen. Stat. § 95.25.14(a)'s plain language precluding overtime claims brought under N.C. Gen. Stat. § 95-25.4 for employers subject to the FLSA; instructively, the NCWHA allows Plaintiff-Appellant, to recover all earned and accruing unpaid promised wages and prejudgment interest pursuant to N.C. Gen. Stat. §§ 95.25.6 and § 95.25.22 respectively regardless of whether Plaintiff-Appellant is also owed statutorily required overtime wages under the FLSA (but avoiding duplicative recovery);

(2)    The district court erred in granting Defendant-Appellee's 12(b)(6) Motion to Dismiss ("MTD") and Resolving Factual Disputes, thereby depriving Plaintiff-Appellant the opportunity to engage in discovery;

(3)    The district court erred in determining whether Plaintiff-Appellant agreed or understood he was subject to a piece-rate compensation system, given the conflicting evidence and relevant case law; moreover, the district court erred in disregarding 29 C.F.R. § 778.318 and 29 C.F.R. § 778.415 by improperly weighing the evidence despite a genuine issue of material fact concerning the existence of a "clear and mutual understanding," that Plaintiff-Appellant, and those similarly

situated, were to be paid piece-rate for all hours worked, including for non-productive hours worked;

(4)    The district court erred in granting Defendant-Appellee's Motion for Summary Judgment ("MSJ") despite the U.S. Supreme Court's binding precedent in *Anderson v. Mt. Clemens* allowing employees' recollection regarding their estimated hours worked where the employer failed to keep accurate records and the Fourth Circuit's binding precedent in *Perez v. Mountaire Farms* relating to compensable pre- and post-shift activities;

(5)    The district court erred in applying the U.S. Supreme Court's holding in *Integrity Staffing Sos. Inc. v. Busk*, where the facts are distinguishable to the instant case, thereby erroneously granting Defendant-Appellee's MSJ;

(6)    The district court erred in granting Defendant-Appellee's MSJ by disregarding the FLSA's 29 C.F.R. § 778.104 that every workweek stands alone, thereby ignoring Defendant-Appellee's admitted discrepancies regarding time and pay records, in addition to, Plaintiff-Appellant and Opt-in Plaintiffs' recollection of excessive hours worked resulting in unpaid overtime wages.

Accordingly, the district court's order granting summary judgment for Defendants-Appellees should be reversed and remanded for further proceedings.

## <u>REQUEST FOR ORAL ARGUMENT</u>

As Plaintiffs-Appellants raise issues of first impression for this Court and generally throughout the country, Counsel for Plaintiff(s)-Appellant(s) respectfully requests oral argument on this matter. Oral argument would help establish and clarify the rule of law, providing guidance on N.C. Gen. Stat. §§ 95.25.6 and §95.25.22, and how it relates to the FLSA's 29 U.S.C. § 207, significantly, whether the NCWHA payday claim, which is separate and distinct from an overtime claim, is in anyway preempted by the FLSA. Moreover, an oral argument would aid in determining the extent to which admissions in superseded complaints may be used in later proceedings, especially where additional evidence supports the Plaintiff-Appellant's revised pleadings, as well as interpreting 29 C.F.R. §778.318 and 29 C.F.R. §778.415.

Respectfully submitted,

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point.</u>

2.      Exclusive of the table of contents; table of citations; certificate of compliance and the  certificate of service, this Opening Brief of Appellant contains <u>12,375 words.</u>

I understand that a material misrepresentation can result in the court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and a copy of the word or line printout.

December 16, 2024

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF SERVICE**

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this December 16, 2024, filed the required copies of the foregoing Opening Brief of Appellant in the Office of the Clerk of the Court, via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Hayden J. Silver III, NCSB No. 10037
Scott D. Anderson, NCSB No. 49044
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Jay.Silver@wbd-us.com
Scott.D.Anderson@wbd-us.com
*Counsel for Defendant-Appellee*

/s/ *Gilda A. Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew Marlowe (NCSB No. 60035)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com

*Attorneys for Plaintiffs-Appellants*

60